good morning your honors Matt Campbell from the Federal Defenders of Eastern Washington and Idaho on behalf of Jesse Barker I'm going to try to reserve three minutes for rebuttal. In this case the district court erroneously found that a prior conviction under 18 U.S.C. 922G for being a felon in possession of a firearm was a crime of violence. The court did so because it based that determination largely on the commentary to the defense attorney's testimony. U.S.C. 922G has been in 2K2.1 and 4B1.2 rather than any recognized prong. You're talking about the application note? Correct. A commentary? Yes your honor. Okay let me ask you a couple of questions about this. At this point do I owe any discretion to the district court in this decision? No your honor. We have interpretation of the guidelines to the facts as abuse of discretion under Kimbrough and the factual determinations clear error. Is this an interpretation of the guidelines or an application of the guidelines to the facts? It's an interpretation of the guidelines your honor subject to de novo review because the issue is what are the bases that a prior conviction can be determined to be a crime of If the district court incorrectly applies the sentencing guidelines and its error is not harmless then we have to vacate. Is this harmless error? The sentencing range for the base offense of 20 is what? At a 20 the base offense level would be excuse months however Mr. Barker got 48 months. So we're saying then there's no question that it's not harmless because he got three months less than he would have under the base under the guideline range? No your honor the base offense level was 20 however he pled guilty so he would have been sentenced at a 17 and at a 17 the offense level would be 37 to 46 months so even at the high end of he would have been looking at two months less than what he received. What Judge Nielsen actually did in this case was determine we argue erroneously that the range is 57 to 71 months and then gave him the low end and then very downward by nine months. If those same calculations were used that would have resulted in a sentence of 28 months and Mr. Barker would in fact be out of which as I understand it is the guideline is the place where we have to go in making these determinations and I look at 2k 2.1 a2 is the application note to that particular guideline says a crime of violence has the meaning given that term in 4b 1.2 a which you could argue and I say I frankly think we'd have to agree with you to some extent that court has found that guideline unconstitutional. Correct. So we got 4.b 4b 1.2 a but the problem comes that it the commentary. Reading that language it doesn't suggest that 4.4 b 1.2 as interpreted by the application note is what we're using. It suggests instead 4b 1.2 a and the application note. Is that a distinction that makes a case? Your honor I don't think it does and I think the reason why it doesn't is that at the time the commentary the application note was written the residual clause was in essence considered valid. Well but just just a second if in fact I mean I read after I read this particular note I read application notes in 2k 1.3 in 2k 2.1 s 1.1 3b 1.5 I read all these different situations in the application notes and it seems to me that in some they say and and in some they say as interpreted by. Does that make a difference? I don't think it does if we look to the Stinson case. Is there a case that suggests it doesn't make a difference? Well I think that if we look at the Supreme Court case in Stinson that says that where the text of a guideline and the commentary of the application notes contradict it's the text of the guideline that controls and if we look at the guidelines themselves I believe it's 1b 1.7 it says as much and cites to Stinson. So what we have here is a situation which through Johnson 2015 the residual clause is no longer valid which means that under the text of the guideline something can only be a crime of violence if it involves either the use of force or is one of the enumerated offenses. This clearly is neither so therefore the commentary amounts to an expansion of the text of the guideline which is not authoritative by the Sentencing Commission and Congress doesn't in fact approve those. Well let me think about this again. The judge Fletcher who did live here, not the one who's returned home to live where she lived, she wrote Barajas versus Wise and in Barajas versus Wise she had a similar situation and she was trying to determine what to do with this kind of a problem and she was in fact looking at 1101 A 43 F and determining, trying to determine whether it applied or whether the application note applied. It seemed to me in reviewing that case she came out differently. That she seemed to think that as if it's to be interpreted and that it is two different interpretations both of which would be applicable. And if I go to and you don't disagree with me that if I applied only the application note and not 4B 1.2 this would be an appropriate sentence? I think the analysis would be significantly more complicated. Well I guess if I read the application note it says a crime of violence does not include the offense of unlawful possession of a firearm by a felon. These are the most important words. Unless the possession of a firearm described in 26 U.S.C. 5854 A which is exactly this one. So the application note would suggest that for the possession of a firearm as indicated in 26 5845 A that is a crime of violence because it's a very dangerous way to possess the firearm. Now so it seemed to me again going back to where I was and trying to get you to help me. The term and in the application note for 2 K 2.1 A 2 is pretty important. I've either got to ignore that and for some reason and I couldn't find a case that would suggest I should or if I read it in then it seems to me I've got a crime of violence especially because you don't dispute that a Molotov cocktail is in fact a destructive device. Your honor taking that at the end and then perhaps going backwards I don't dispute that a Molotov cocktail in destructive device but I do dispute whether Mr. Barker was ever convicted of that. Since you was only pled under 922 G the statement that there was a Molotov cocktail involved would be verbal surpluses at best that under de Camp would not be part of the analysis that we would engage in. But I think to get to the court's fundamental question which was the use of the word and I think it's a that it's not a divisible crime. It is not a divisible crime and the government concedes that 922 G is not a divisible crime. So I think the fundamental question is how much of an import does the word and have and again I think that at the time the guideline and the commentary was drafted the and language perhaps made more sense because at the time the residual clause was to do with the residual clause. It has all to do with whether you have you use the guideline which is that the 2k 2.182 or whether you can use that and the application note. The application note doesn't talk about otherwise involves conduct that presents a serious potential risk but we've studied application note says there are possessions which are in fact crimes of violence. What we've tried to do is cite a number of cases specifically Shell, Stinson and others that stand for the proposition that once the residual clause is excised the commentary that interpreted is no good and I would cite the court to the Soto Rivera case out of the First Circuit that was issued this point and I appreciated your point until I thought to myself if it's as interpreted by I think his cases are dead on but if it's not as interpreted by and that's why I went to all these other application notes in all these other sections to determine if they use and or they use and as interpreted by or what they do use it seems to me that and is a different situation than as interpreted by and all of your cases are really about if you will those guidelines that are as interpreted by. I understand the court's point I've yet to come across a case that says that the commentary can simply create a freestanding exception I'd rely on the case of cited I realize I'm far over time already. Why don't we hear from the other side but we'll make sure you have a chance to speak. Good morning your honors may it please the court Melissa Liu on behalf of the United States the defendant raises a number of arguments relating to 4b 1.2 that are currently before the Supreme Court in Beckles however this is not the case and we don't even get to 4b 1.2 but for the fact that 2k 2.1 incorporates excerpts of 4b 1.2 into its definition of a crime of violence and but the question remains to me of whether it might be useful for us to wait till Beckles comes down to see what the court writes. Yes I think it could be useful if the court disagrees with the government's definition of a crime of violence which is it says crime of violence is defined in 4b 1.2 and comment 1 to 4b 1.2 so it's as if the sentencing commission copied portions of those text and reprinted them in full in comment 1 to 2k 2.1 thereby setting them on equal footing I think that's the appropriate interpretation of that definition how long was he sentenced to remind me and when would he be released in the ordinary course of events and when do we expect the Beckles case to come down he was sentenced to 48 months and when was that sentence imposed I'm sorry may I yeah sure sure July 2015 yes thank you your honor it was imposed July 23rd 2015 so he's a little more than a year in okay to a little more than a year into a four year sentence yes his estimated release date I believe is July 5th and 2017 so yes I think it it could be useful for the court to wait for the Beckles decision if it disagrees with the government's interpretation of the definition of crime of violence in 2k 2.1 noting that Beckles and Soto Rivera the First Circuit case deal exclusively with 4b 1.2 whereas this is a 2k 2.1 much like Tate I'd like to also address the issue of the categorical analysis the government recognizes that the categorical analysis applies to the guidelines generally but it applies to cases where there's a matching analysis needed here the text of the definition that we're looking at specifically that case note 1 to 4b 1.2 really dictates a circumstances-based approach like the Supreme Court's case Nijuan versus Holder and in Nijuan the Supreme Court was looking at this monetary threshold required for a fraud to be an aggravated felony under an immigration statute and the court noted that there are some that refer to a crime as committed on a specific instance and the court concluded that that particular statute fell in the latter category and there was no need for a categorical matching analysis like that case the language we're looking at here also falls into that latter category it's clear that the Sentencing Commission is asking sentencing courts to look at the crime as committed on a particular instance namely the type of firearm that the defendant and lawfully possessed and so the government submits that the categorical matching analysis is simply inapplicable to this particular language that we're looking at Counsel what is the significance of explosive device? I'm sorry your honor I'm not sure I understood. Does it matter that he's not using not convicted of explosive device although appellant says he wasn't convicted of that. What is the significance here? Yes your honor the government does not argue that 922 G is not divisible however you only have to look at a prior conviction as a complete package under Taylor and Shepard when you're looking to vindicate Sixth Amendment rights and here the Sixth Amendment isn't implicated this is just straightforward judicial fact-finding and so really the sentencing guideline requires sentencing courts to look at unlawful possession plus whether or not a person possessed a firearm that falls into this really dangerous category and so it's not significant for sentencing purposes the fact that that wasn't an element that the jury necessarily had to find. I'd also like to note that a Molotov cocktail does fall into this category of really dangerous firearms alongside things like rockets and missiles and so there's really not a concern about judicial fact-finding here because first of all the defendant had ample opportunity here to object to the fact the Molotov cocktail particularly when 2k 2.1 became an issue and also one would think that since it is a really dangerous firearm and if he had had a bottle of something else like a bottle of soda he probably would have said so and so there's no concern about that here. If the court has no further questions the government respectfully requests that the court affirm defendant's sentence. Thank you. Thank you. Why don't we put a minute on the clock. Thank you Your Honors. Very briefly in regard to waiting on Beckles we would ask the court not do that for practical reasons. Beckles as of this morning sitting here has yet to be set for oral argument so any decision is likely to come at the end of the term which perhaps June of 2017 which means that this case will become moot since Mr. Barker is set to be released in July of 2017. Also I don't think Beckles is... Would it really become moot that is to say I understand that he's scheduled for release from custody in July but I assume that depends on good behavior and if we were in the end to say that the sentence has to be shorter would that have any influence on his period of supervised release? I suppose it could go against bank time on supervised release. So I'm not sure it's moot. It may be a reason not to wait but I'm not sure. It may be the fact that if he behaves himself he's likely to be released from the custodial part of the sentence. I think that's maybe a good reason not to wait but I'm not sure it becomes moot. I think the other thing is that Beckles is largely a retroactivity case and I noted that the Supreme Court had to appoint an amicus to even argue that the residual clause under 4b 1.2 wouldn't apply. Very briefly in regard to the issue about the explosive device that Judge Gould had asked about I did want to point out the government only addresses the constitutional underpinnings of Taylor and DeCamp and ignores the other two underpinnings namely the textual analysis as well as what Justice Kagan identified as being the fairness equity arguments. In other words a defendant has no reason to complain about a deficiency whether it's a Molotov cocktail or whether or not it's another firearm at the time of the conviction and that's the situation we have here where the government sets up a false paradigm where it says Mr. Barker could very well have objected to that at the time. There's no reason to and as Justice Kagan explains you may very well irk the prosecutor or irk the court if you're arguing about a factual discrepancy that doesn't matter. Okay thank you I'm over time again. Thank both sides for their arguments. United
judges: W. Fletcher, Gould, N.R. Smith